**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0675-23

IN THE MATTER OF A NEW
JERSEY SOLAR TRANSITION
PURSUANT TO P.L. 2018, C.17.

IN THE MATTER OF THE
VERIFIED PETITION OF
ESNJ-PLD-CLIFTON1, LLC FOR
ACCEPTANCE OF THE POST-
CONSTRUCTION CERTIFICATION
PACKAGE FOR TRANSITION
INCENTIVE NUMBER
NJSTRE1547187150.

_____

Submitted January 6, 2026 – Decided March 9, 2026

Before Judges Rose and DeAlmeida.

On appeal from the New Jersey Board of Public Utilities, Docket Nos. QO19010068 and QO23010049.

Offit Kurman, attorneys for appellant ESNJ-PLD-CLIFTON1, LLC (Matthew A. Karmel and Paul Recupero, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Board of Public Utilities (Donna Arons, Assistant Attorney General, of counsel;

Steven A. Chaplar, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner ESNJ-PLD-CLIFTON1, LLC (ESNJ) appeals from the September 18, 2023 order of respondent New Jersey Board of Public Utilities (BPU or Board) denying its request for an extension of time to submit documents certifying it timely completed a solar energy project registered in the Board's Transition Incentive (TI) program. We reverse.[1]

I.

Pursuant to the Solar Act of 2012, N.J.S.A. 48:3-51 to -87, the BPU administered the Solar Renewable Energy Certificate (SREC) program to incentivize the development of solar energy projects in this state. N.J.S.A. 48:3-87. The SREC program provided payments to newly constructed solar energy generators in the form of tradeable SRECs representing one megawatt-hour of solar energy generated by a facility connected to the electric distribution system. The value of an SREC was driven by the energy market. See N.J.S.A. 48:3-51.

---

[1] We simultaneously issue our opinions in two other matters affirming the Board's denial of requests to extend project completion deadlines for TI program projects: In re N.J. Solar Transition Pursuant to P.L. 2018, C. 17, Docket Nos. A-3818-22 and A-0670-23, and In re N.J. Solar Transition Pursuant to P.L. 2018, C. 17, Docket No. A-0686-23 and A-0689-23.

On May 23, 2018, the Clean Energy Act (CEA), N.J.S.A. 48:3-87.9, was enacted. The CEA directed the BPU to close the SREC program to new applications once the BPU determined 5.1% of the kilowatt-hours sold in the state was generated by solar electric power connected to the electric distribution system (the 5.1% Milestone). The CEA also directed the BPU to complete a study evaluating how to replace the SREC program once the 5.1% Milestone was reached to encourage the continued efficient and orderly development of solar renewable energy generating sources in the State. Ultimately, the study recommended enactment of the Successor Solar Incentive (SuSI) program.

A. The TI Program.

On December 6, 2019, after the SREC program closed, the BPU established the TI program, N.J.A.C. 14:8-10.1 to -10.7, to provide developers of solar projects a bridge between the closed SREC program and the then-still-to-be-developed SuSI program. The TI program provided eligible projects with Transition Renewable Energy Certificates (TREC) for each megawatt-hour of electricity produced. The TREC incentives were specifically tailored for each project.

The TI program began accepting registrations on May 1, 2020. Pursuant to the TI program's regulations, a solar developer had one year from registration

with the program to complete construction of the solar project and submit a post-construction certification package. N.J.A.C. 14:8-10.4(f)(4)(ii)(2). TI program rules did not allow for an extension of a project completion deadline, also referred to as the project's expiration date. However, the BPU was authorized to waive its regulations for good cause. N.J.A.C. 14:1-1.2(b).

On July 29, 2020, the BPU issued an order granting a blanket extension of completion deadlines for projects registered in the TI program on or before October 30, 2020, and setting a new project completion deadline of October 30, 2021, for all affected projects. The BPU found the extension was warranted because the solar industry was adjusting to the COVID-19 pandemic and changes in the statewide solar incentive programs.

On June 24, 2021, the BPU issued an order providing a further six-month extension of project completion deadlines for all projects registered in the TI program as of that date. The BPU found the solar industry was still adjusting to the COVID-19 pandemic and the regulatory uncertainty caused by the anticipated launch of the SuSI program, which remained under development. The BPU determined extending existing TI program project completion deadlines would support the solar industry and protect ratepayers from potential

4

market disruptions that would arise if TI program projects expired before completion and were abandoned.

On July 9, 2021, the Solar Act of 2021, N.J.S.A. 48:3-114 to -120, was enacted. The statute authorized the BPU to launch the SuSI program.

On July 28, 2021, the BPU announced the TI program would close on August 28, 2021, when the SuSI program would begin accepting solar project applications. The final day to submit a new application to the TI program was August 27, 2021.

On August 28, 2021, the Board launched the SuSI program, which had an administratively determined incentive (ADI) program, meant for relatively smaller solar generation projects, and a competitive incentive (CSI) program, intended for larger "grid supply" solar generation projects. N.J.S.A. 48:3-115 to -117; see also N.J.A.C. 14:8-11.4 (detailing eligibility criteria for different classes of projects in SuSI program); N.J.A.C. 14:8-11.5(d)(1) (describing required application information for ADI program).

On January 26, 2022, the BPU issued an order allowing solar projects registered in the TI program, where the solar developer was unlikely to complete the project by its project completion deadline, to migrate to the SuSI program. To facilitate this, the BPU waived certain technical requirements of the ADI

program, such as the prohibition against including projects where construction had already commenced. See N.J.A.C. 14:8-11.4(b) (explaining the ADI program would only be open to new projects that had not commenced commercial operation prior to the opening of the ADI program registration portal). The Board found facilitating the ability of projects registered in the TI program to enter the ADI program would benefit the solar industry and avoid stranding, without incentives, a then-increasing number of TI registrants that might be unable to complete projects within the relevant project completion deadlines.

B.     The Gibbstown Order.

On June 8, 2022, the BPU issued an order pursuant to N.J.A.C. 14:1-1.2(b) granting a conditional six-month extension of the project completion deadline for a TI program solar project in Gibbstown (the Gibbstown Order). That project was accepted into the TI program on June 15, 2020, and had an initial project completion deadline of June 15, 2021. After application of the two blanket extensions issued by the BPU, the project's completion deadline was extended to April 30, 2022.

In March 2022, the developer requested an extension of the project completion deadline to July 30, 2022. In April 2022, the developer amended the

application, requesting an extension of the project completion deadline to December 31, 2022. In support of its application, the developer stated it completed construction of the project, submitted a post-construction certification package, and documented the project was capable of fully energizing and connecting to the electricity grid. However, the developer alleged the local electric distribution company (EDC) had not completed offsite upgrades necessary to allow interconnection of the project to the electric distribution system at full capacity. As a result, the EDC granted permission to operate (PTO) the project only at partial capacity at the level that could be accommodated by the then-existing electric distribution system.

According to the application, the developer paid all invoices it received from the EDC for the necessary upgrades, the completion of which was entirely under the control of the EDC. The EDC initially advised the developer the offsite upgrades necessary to allow full capacity interconnection to the electric distribution system would be completed by April 2022, in time to meet the project completion deadline. The EDC later informed the developer the upgrades would not be completed until fall 2022. This potentially left a portion of the capacity of the project without access to solar energy incentives for failure to meet the project completion deadline.

A-0675-23

In considering the extension application, the Board noted "[t]he general purpose of the TI [p]rogram [r]ules, as well as the timelines contained therein, is to provide a smooth transition to the [SuSI] [p]rogram and support to New Jersey's thriving solar market while safeguarding the interest of the State's ratepayers by doing so at the lowest possible cost." Quoting N.J.A.C. 14:1-1.2(b), the Board noted "[i]n special cases, upon a showing of good cause [it] may, unless otherwise specifically stated, relax or permit deviations from" its regulations. The Board acknowledged waiver of its regulations is appropriate where compelling "full compliance with the rule(s) would adversely affect the ratepayers of a utility . . . , [and] the ability of said utility . . . to continue to render safe, adequate and proper service, or in the interests of the general public." N.J.A.C. 14:1-1.2(b)(1). Applying this authority, the Board found if the Gibbstown developer could substantiate the claims made in its extension application, "the unforeseeable delay in the EDC's completion of its upgrades represents good cause to waive the deadline" and grant a six-month extension.

In addition, the Board found it was

> concerned that, under the unique circumstances occasioned by the end of the TI [p]rogram, solar developers that enter into interconnection agreements with the explicit understanding that the interconnection upgrades would be complete prior to a project's TI [p]rogram expiration not be penalized for delays in the

8

EDC's construction of upgrades that were funded in good faith by the project developer.

Thus, the Board "ma[de] conditional extensions available to similarly situated parties on comparable terms" where:

> 1.     The project can demonstrate that it was electrically and mechanically complete prior to its TI [p]rogram expiration date, which the Board interprets as a project that could be energized, but for the lack of a necessary [PTO] from the EDC due to factors that are the sole responsibility of the EDC;
>
> 2.     The project can demonstrate that it had received and satisfied all necessary permits from all authorities having jurisdiction over the project prior to its TI [p]rogram expiration date, including required final inspections; and
>
> 3.     Project construction was proceeding based on a representation from the EDC that any necessary interconnection upgrades would be completed prior to the project's TI [p]rogram expiration date, that the upgrades were fully funded by the project developer, but that despite the developer's best efforts, the estimated upgrade completion date was unilaterally extended by the EDC.

The Board determined to be eligible for a six-month extension under these criteria, a developer must apply for the extension before the project's completion deadline, and submit specified documents. In addition, the BPU ordered:

> In evaluating conditional waiver requests, the TI [p]rogram administrator should review the construction schedule presented by the EDC at the time or after the

9

interconnection agreement was executed, to determine if the EDC's estimated construction schedule was consistent with the project's TI [p]rogram expiration date. So long as the developer timely provided any necessary deposits at the time billed by the EDC, met all other requirements imposed by the EDC, and the construction schedule was otherwise feasible within the constraints of the TI [p]rogram, then the Board believes that solar developers who reasonably relied on the EDC's schedule, and proceeded with the project, should be provided relief.

The Board directed the Gibbstown developer to submit the documents identified in the Gibbstown Order in support of its application.

C. ESNJ's Project and Petition.

ESNJ is a limited liability company and wholly-owned subsidiary of PowerFlex Solar, LLC (PowerFlex), which formed ESNJ for the sole purpose of developing a project in the TI program. ESNJ does not have employees and is operated by PowerFlex employees. PowerFlex develops solar energy projects across the country.

On June 24, 2021, ESNJ applied to register a rooftop solar energy system in Clifton in the TI program. The BPU conditionally accepted the project on June 29, 2021, resulting in a project completion deadline of June 29, 2022. The BPU's conditional registration letter stated that ESNJ "must submit a complete Final As-Built Package (Post Construction Certification) . . . on or before the

A-0675-23

project's expiration date . . . ." The letter continued, "If a complete Final As-Built Package is not submitted on or before the expiration date, the application will be cancelled." See N.J.A.C. 14:8-10.4(g) ("When construction of the solar electric generating facility is complete, the facility owner shall submit a post-construction certification package . . . ."). The project completion deadline was extended to December 29, 2022, by virtue of the Board's June 2021 order.

On December 12, 2022, in advance of the project completion deadline, ESNJ completed its project and obtained PTO from the EDC. The project was in commercial operation before the project completion deadline.

As of December 15, 2022, also in advance of the project completion deadline, ESNJ prepared, obtained, or collected all information needed for the post-construction certification package in accordance with N.J.A.C. 14:8-10.4(g). However, due to an administrative oversight, PowerFlex employees failed to submit the post-construction certification package prior to the project completion deadline.

At 10:27 p.m. on December 30, 2022, the day after expiration of the project completion deadline, a BPU representative sent ESNJ an email stating the conditional registration of the project in the TI program expired because ESNJ had not filed the post-construction certification package.

On Saturday, December 31, 2022, an ESNJ representative responded by email, stating "[a]ll documents are ready," but they were "locked out of this application." In addition, the representative attached a PTO letter from the EDC dated December 13, 2022.

On January 3, 2023, a BPU representative responded:

> Unfortunately, we can not (sic) reactivate your project. Our system does not show that you attempted to submit the finals prior to the 12/29/22 expiration date[,] which is why our system automatically expired your project the following day.
>
> You can try to file an appeal or petition the [B]oard to have this reactivated.

On January 25, 2023, ESNJ filed a verified petition with the BPU requesting either acceptance of its post-construction certification package or reactivation of its project's registration in the TI program solely to permit ESNJ to submit its post-construction certification package. ESNJ emphasized it was not seeking an extension of its project completion deadline because it completed its project and finalized the post-construction certification package before the project completion deadline.

ESNJ argued good cause existed pursuant to N.J.A.C. 14:1-1.2 to grant the relief it sought because: (1) ESNJ invested significant resources to complete the project; (2) the project was completed by the project completion deadline;

(3) ESNJ compiled all information and documents necessary for the post-construction certification package prior to the project completion deadline; (4) failure to file the post-construction certification package was the result of an administrative oversight; (5) ESNJ attempted to file the package immediately after notification the project had expired; and (6) the project was on the rooftop of a building owned by Prologis, L.P., or its affiliate (Prologis) and pursuant to a contract, Prologis would receive the incentives provided by the TI program. Thus, if the project was removed from the TI program, Prologis, and not ESNJ, would suffer a financial loss.

In support of its petition, ESNJ stated that in December 2022, PowerFlex was managing approximately fifty solar projects in the TI program. According to ESNJ, PowerFlex's management of those projects created a significant administrative burden. ESNJ did not, however, identify with precision the circumstances resulting in the failure to file the post-construction certification package by December 29, 2022.

ESNJ also relied in part on the Board's March 9, 2022 order concerning two TI program projects at the Pennsville landfill (Pennsville Order). The developer of those projects submitted required registration paperwork to the BPU six days after the deadline for submission to a pilot program. A Board

13

representative denied both applications as untimely. The developer filed a petition with the Board seeking an extension of the deadline for submission of its registration papers. In support of the petition, the developer stated the project manager primarily responsible for the projects had been replaced and the transition to the new manager resulted in an oversight with respect to the submission deadline.

In addition, the developer noted the projects were components of a redevelopment plan for the landfill, which was intended to generate financial benefits for the municipality and provide power to low- and moderate-income subscribers. The Pennsville projects were not likely to be constructed if unable to obtain the TI program incentives.

The Board granted the petition. It found the Pennsville projects were selected in a highly competitive process as community solar projects, a new segment of the state's solar energy industry supported by the Board. In addition, the Board found submitting the registration documents "was a routine administrative step" that did not have an impact on the selection or non-selection of projects to participate in the pilot program. Granting the relief, therefore, would not advantage or disadvantage other pilot program applicants. In addition, the Board noted both the TI program and the pilot program were set to

14

expire and the circumstances giving rise to the petition, therefore, were unlikely to recur. The Board reopened the registration period for the Pennsville developer to submit its program registration materials within fourteen days.

ESNJ argued, like the submission of registration papers in the Pennsville matter, submission of a post-construction certification package for ESNJ's project was a "routine administrative step" that had no effect on the completion of the project, its connection to the electric distribution system, or other projects in the program. Thus, it argued, good cause existed to accept ESNJ's post-construction certification package as if it had been submitted on time or to extend the time to submit the package.

ESNJ also argued although the project's conditional registration letter stated ESNJ must submit a post-construction certification package on or before the project expiration date, N.J.A.C. 14:8-10.4(g) did not require submission of the package by a specific date. The regulation provides, "[w]hen construction of the solar electric generating facility is complete, the facility owner shall submit a post-construction certification package . . . ." N.J.A.C. 14:8-10.4(g). ESNJ argued because the regulation did not establish a deadline for filing a post-construction certification package, the Board was authorized to accept ESNJ's package even if good cause did not exist under the regulation.

15

D.    The September 18, 2023 Order.

On September 18, 2023, the BPU issued an order denying ESNJ's petition along with the petitions of seventeen other developers to extend the project completion deadlines for TI projects that were not completed, had not obtained PTO, were awaiting municipal inspections, or were unlikely to be completed and operating in a timely fashion for other reasons.

With respect to ESNJ's petition, the order set forth staff recommendations acknowledging ESNJ's project was completed and received PTO before its completion deadline.  In addition, the recommendations noted ESNJ's failure to file the post-construction certification package before the December 29, 2022 deadline was the result of an administrative oversight, and ESNJ promptly attempted to remedy its mistake by submitting the package.  Board staff recommended the Board deny ESNJ's petition and find the administrative burden of managing multiple solar projects did not constitute an acceptable rationale for failing to comply with BPU rules or constitute good cause for a waiver under N.J.A.C. 14:1-1.2.  According to the staff recommendations, when a large-scale solar developer such as PowerFlex pursues incentives, it is expected to have the capacity to comply with the rules governing the incentive programs.  Board staff distinguished the circumstances giving rise to the Pennsville Order from ESNJ's

16

petition by noting the Pennsville projects were accepted through a competitive process in a pilot program in a new sector of the solar energy industry, factors not present here. Staff also was not persuaded by ESNJ's argument regarding the absence of a specific timeframe in N.J.A.C. 14:8-10.4(g) for submitting a post-construction certification package.

The Board adopted the staff recommendations with respect to all eighteen petitions as follows:

> Following careful review of the record, including filed petitions, supplements, responses, and Staff's recommendations, the Board HEREBY ADOPTS Staff's recommendations. The Board FINDS that petitioners here were on notice of time limitations in the TI Rules at the time of their registrations and were on notice that the TI Rules do not provide for extensions.

In reaching its decision, the Board balanced the developers' interests in having invested in projects against the public's interest in timely completion of projects, the ratepayers' interest in controlling the cost of solar subsidies, and the State's interest in ensuring solar incentive levels appropriately reflect the time during which a project reaches commercial operation. The Board found strict compliance with its regulations furthered the interests of the State and public in an orderly transition from the legacy TI program to the SuSI program and in reducing the cost of achieving the State's solar energy goals.

While the Board addressed at length delays in completing projects caused by supply chain issues, municipal inspections and permitting delays, general interconnection processing delays, registration of projects in the closing days of the TI program registration period, failure to reach commercial operation, and other issues, it did not discuss the facts supporting ESNJ's petition.

The Board encouraged the developers to register their projects in the ADI aspect of the SuSI program. To facilitate the transfer of the projects to the SuSI program, the Board waived N.J.A.C. 14:8-11.4(b), which prohibited admission of projects in SuSI where construction had commenced, for the programs addressed in the September 18, 2023 order.[2] This appeal followed.

ESNJ argues: (1) the September 18, 2023 Order is entitled to less judicial deference than is ordinarily accorded to agency decisions because it concerns an administrative matter outside the Board's area of expertise; (2) it established

---

[2]  The Board also found the Gibbstown Order was not rulemaking, but an adjudication on the specific facts presented in the Gibbstown project extension application. The Board found the Gibbstown Order did not establish a broadly applicable policy determination, but was an application of N.J.A.C. 14:1-1.2(b) to the facts relating to the Gibbstown project and an attempt to lessen the regulatory burden on a small group of developers in similar circumstances. Thus, the Board concluded issuance of the Gibbstown Order was an exercise of its quasi-judicial, not quasi-legislative authority, and compliance with the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -31, was not necessary.

good cause pursuant to N.J.A.C. 14:1-1.2 to permit submission of its post-construction certification package after the project completion deadline; (3) the Board acted arbitrarily and capriciously because it historically found good cause for waiving purely administrative requirements where strict compliance would prevent projects from obtaining TI program incentives; (4) the Board acted arbitrarily and capriciously because it provided more substantial relief than the relief requested by ESNJ in the Gibbstown Order to a project that was not completed prior to its project completion deadline; (5) it complied with the TI program regulations, which do not establish a timeframe for submission of a post-construction certification package; (6) the Board acted arbitrarily and capriciously because it failed specifically to address ESNJ's petition in the September 18, 2023 Order; and (7) the Board's issuance of the Gibbstown Order was rulemaking without compliance with the APA and was, therefore, a denial of due process and an invalid basis on which to deny its petition.

## II.

The scope of our review of a final decision of an administrative agency is limited and we will not reverse such a decision unless it is "arbitrary, capricious, or unreasonable, or . . . not supported by substantial credible evidence in the record as a whole." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry

v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)).  When making that determination, we consider:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Ibid. (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).]

We are, however, "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue."  Carter, 191 N.J. at 483 (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

During our review, we must remain mindful "[t]he Legislature has endowed the BPU with broad power to regulate public utilities . . . [and] considerable discretion in exercising those powers."  In re Pub. Serv. Elec. & Gas Co.'s Rate Unbundling, 167 N.J. 377, 384-85 (2001) (quoting In re Elizabethtown Water Co., 107 N.J. 440, 449-50 (1987)).  The Board's decisions are presumed to be valid "and will not be disturbed unless [the court] find[s] a lack of 'reasonable support in the evidence.'"  Id. at 385 (quoting In re Jersey Cent. Power & Light Co., 85 N.J. 520, 527 (1981)).  We may set aside a BPU

order "when it clearly appears that there was no evidence before the [B]oard to support the same reasonably or that the same was without the jurisdiction of the [B]oard." N.J.S.A. 48:2-46.

Having reviewed the record, we conclude the Board's denial of ESNJ's petition was arbitrary and capricious. Unlike the other developers addressed in the September 18, 2023 order, ESNJ did not request an extension of the project completion deadline for its project. ESNJ completed its project, obtained PTO, and compiled its post-construction certification package prior to the December 29, 2022 deadline. The only relief sought by ESNJ was permission to submit its post-construction certification package to BPU two days after the deadline because of an administrative oversight.

In its September 18, 2023 order, the Board found ESNJ's administrative oversight was "not an acceptable rationale for failing to comply with BPU rules" and did not constitute good cause under N.J.A.C. 14:1-1.2 because PowerFlex, a large-scale solar developer, should have had the capacity to follow the TI program rules for its subsidiaries. ESNJ, however, did not argue the administrative oversight was a rationale for failing to submit the post-construction certification package on time. It instead identified the administrative oversight as the reason it inadvertently missed the submission

21

deadline and promptly asked that its mistake be excused. Nor did ESNJ argue PowerFlex lacked the capacity to submit its post-construction certification package by the deadline. Again, ESNJ acknowledged despite PowerFlex's sophistication, an administrative oversight caused ESNJ to miss a deadline, requiring a short extension to remedy the error.

The Board did not explain why ESNJ's prompt attempt to correct an administrative oversight was not good cause to permit a two-day extension of the deadline for submission of paperwork memorializing the timely completion of a project. The Board's decision sharply contrasts with its decision to excuse a six-day delay in submitting TI program project registration paperwork in the Pennsville Order. There, the developer argued a change in the project manager resulted in an oversight regarding the deadline for submitting the registration, which the developer unsuccessfully attempted to submit six days after the deadline. The Board, in granting the extensions, characterized the submission of the registration paperwork as "a routine administrative step" that had no effect on the selection or non-selection of projects to participate in the TI pilot program. The Board also noted an extension was warranted because the TI program and the pilot program were about to expire and the circumstances giving rise to the Pennsville petition were not likely to recur.

22

In its September 18, 2023 order, the Board did not explain why the submission of a post-construction certification package is not "a routine administrative step," the extension of which has no impact on the selection or non-selection of projects to participate in the TI program. Nor did the Board address that at the time ESNJ failed to submit its post-construction certification package, the TI program was about to expire and the circumstances giving rise to ESNJ's petition were not likely to recur. These are the precise factors cited by the Board as justification for granting an extension in the Pennsville matter.

Perhaps most importantly, in the September 18, 2023 order, the Board cited as justification for denying the petitions of seventeen developers for an extension of project completion deadlines the State's interest in ensuring solar incentive levels appropriately reflect the time during which a project reaches commercial operation. ESNJ's project reached commercial operation before December 29, 2022, when the TI program was active. By the Board's reasoning, ESNJ's project should have received the incentives provided by the TI program, despite the administrative oversight that resulted in the short delay in submitting the project's post-construction certification package, which had no impact on the commercial operation of the project.

A-0675-23

Because ESNJ expended significant funds to complete the project on time, despite the supply chain issues that stymied many other developers, obtained PTO, and initiated the project's commercial operations before the project completion deadline, the Board's denial of ESNJ's petition for a short extension to submit administrative paperwork memorializing the project's completion was arbitrary and capricious. We are, therefore, constrained to reverse the Board's denial of ESNJ's petition.

We remand the matter to the BPU for entry of an order permitting ESNJ to file its post-construction certification package, which shall be processed as if it had been submitted on or before December 29, 2022. We do not retain jurisdiction.[3]

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

---

[3]  Because we conclude under our generally applicable standard of review the Board's denial of ESNJ's petition was arbitrary and capricious, we need not address ESNJ's argument the September 18, 2023 order is entitled to a lesser level of deference because it addressed an administrative issue outside the agency's area of expertise. See In re Petition of N.J. Amer. Water Co., 169 N.J. 181, 195 (2001). We decline to address ESNJ's remaining substantive arguments, some of which are discussed in the opinions issued today concerning appeals from the order by other developers.

A-0675-23